Feeney v State of New York (2023 NY Slip Op 06574)

Feeney v State of New York

2023 NY Slip Op 06574

Decided on December 21, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 21, 2023

535681
[*1]Eileen Feeney et al., Appellants,
v
State of New York, Respondent.

Calendar Date:November 21, 2023

Before:Lynch, J.P., Ceresia, Fisher and Powers, JJ.

LaMarche Safranko Law PLLC, Cohoes (George E. LaMarche III of counsel), for appellants.
Letitia James, Attorney General, Albany (Douglas E. Wagner of counsel), for respondent.

Lynch, J.P.
Appeal from a judgment of the Court of Claims (W. Brooks DeBow, J.), entered May 16, 2022, upon a decision of the court in favor of defendant.
On September 2, 2017, claimants Eileen Feeney and her spouse traveled to the Village of Lake Placid, Essex County for their nephew's wedding. That evening, claimants attended a welcome party for out-of-town guests, and, around 10:45 p.m., began to walk back to their accommodations with another couple. While crossing Main Street, Feeney stepped off the sidewalk curb into a pothole, fracturing her ankle. The pothole was located adjacent to the curb, within a three-feet by three-feet cut-out section of the roadway where the pavement had been removed and patched with asphalt (hereinafter the cut-out). The cut-out area was approximately one inch below grade and the curb was approximately one inch higher than the pavement grade. The pothole measured 8 inches long by 3 feet wide, and there was a depth of 5½ inches from the top of the curb to the bottom of the pothole. Claimants filed a claim against defendant seeking damages for negligence and loss of consortium. Following a bench trial, the Court of Claims dismissed the claim, finding that claimants failed to prove by a preponderance of the evidence that defendant either created the pothole or had actual or constructive notice thereof. Claimants appeal.
We reverse. "Defendant 'owes the public a nondelegable duty to maintain its roadways in a reasonably safe condition' " (Roque v State of New York, 199 AD3d 1092, 1094 [3d Dept 2021], quoting Schleede v State of New York, 170 AD3d 1400, 1401 [3d Dept 2019]; see Friedman v State of New York, 67 NY2d 271, 283 [1986]). The record confirms that defendant was responsible for maintaining the roadway where Feeney was injured and that it neither created nor had actual notice of the pothole, which the Court of Claims duly found constituted a dangerous condition. This appeal centers on whether claimants established that defendant had constructive notice of the pothole, i.e., that the pothole was "visible and apparent and . . . exist[ed] for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it" (Gordon v American Museum of Natural History, 67 NY2d 836, 837 [1986]).
The Court of Claims' observation that the pothole was caused by the cycle of freezing and thawing of water "that seeped into the seam of the cutout or edge of the curb" is supported by the testimony of the four witnesses — two of whom were retired — who worked for the Department of Transportation (hereinafter DOT). The record demonstrates that the cut-out was made by October 2015. That said, the operative question remained as to when the pavement deteriorated to form the pothole. All four DOT witnesses acknowledged that they did not know how long the pothole existed prior to Feeney's accident. One DOT witness, a retired assistant resident engineer, confirmed that with a "freeze/thaw in the winter . . . the actual [*2]popping out [of a pothole] . . . can occur sometime later, even in warmer months." The key testimony came from George Laundrie, DOT's resident engineer in Essex County. When asked whether the pothole "must have formed sometime prior to the summer" of 2017, Laundrie responded: "I don't think it's fair to say it must have formed prior to June of 2017. I think it'd be fair to say it's likely it probably formed prior to that . . . , I wouldn't say must have, but it's probably pretty likely it formed prior to June." In assessing this testimony, the Court of Claims concluded that it was "unclear from [Laundrie's] testimony whether he meant that the pothole as it existed on September 2, 2017 had been formed no later than June 2017, or that the pavement started breaking up due to the freezing and thawing cycle no later than June 2017." That analysis misses the point that Laundrie's testimony addressed the condition of the pothole as shown in a photograph in evidence — claimants' exhibit 13 — depicting the accident scene on September 2, 2017.
In reviewing a nonjury verdict on appeal, this Court has broad, independent authority to weigh the evidence and render a judgment "warranted by the facts" (Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499 [1983]; see Roque v State of New York, 199 AD3d at 1094; Ball v State of New York, 106 AD3d 1248, 1249 [3d Dept 2013]). In our view, Laundrie's testimony was not ambiguous and established that it was probable that the pothole existed for several months before Feeney's accident. Correspondingly, the record shows that defendant's road maintenance crews worked in this area six times since January 2017, and most recently in July 2017. On this record, we conclude that claimants met their burden of proving that despite having constructive notice, defendants were negligent in failing to repair the pothole (see PJI 1:60). Inasmuch as issues of comparative negligence and damages remain to be determined, the claim must be remitted to the Court of Claims (see Court of Claims Act § 24; Lancaster Dev. v State of New York, 148 AD2d 892, 894 [3d Dept 1989]).
Ceresia, Fisher and Powers, JJ., concur.
ORDERED that the judgment is reversed, on the law, without costs, and matter remitted to the Court of Claims for further proceedings not inconsistent with this Court's decision.